On the 6th January, 1806,
Brevard, J.,
delivered the opinion of himself, and Grimke, J., as follows : This was an action to re. cover damages fortortiously seizing goods for rent, which it has been alleged, were not hable to distress. There was some evidence given at the trial, as appears from the notes of Judge Johnson, who presided, that Clayton, the tenant in possession of the premises, and from whom the rent was due, was a factor, or broker, or exercised, at the time of tbe distress levied, some such employment; it being *90 his business to receive and sell goods on commission. If the goods' of a stranger, in the possession of any person exercising the employment of a factor, broker, or consignee, are protected by law. an<^ exernPt fr°m being taken by distress for rent, a new trial, in this case, ought to be granted, because, although the evidence, as to the nature of Clayton’s employment, was slight and unsatisfactory, yel, as there was some evidence on the point, it ought to have been left to the jury, and upon that evidence they might have given a different verdict than that which they have found, if the law and evidence had been differently stated to them by the judge.
The question now before the court is, whether the law on the subject of distress was, or was not, correctly stated by the judge, in his charge to the jury ? And we are of opinion it was so.
The law of distresses, as it prevailed in England, it is presumed was adopted by the inhabitants of this country, upon the first settlement of it; or as soon as the distinction or relation of landlord and tenant was established. By the common law of England, the distress was no more than a pledge, to compel the performance of service, and could not be sold till after the statute, 2 Wm. and M. c. 5.
Generally, all chattels personal, taken on the premises, were liable to distress. The particular exceptions to this general rule, are all founded on public convenience. The utensils of a man’s trade cannot be distrained, because it would be injurious to the general interests of society to deprive men of the only means of their support and preservation. So things sent to public places of trade, as cloth at a tailor’s shop, and the like, are not distrainable, for it would be a great public inconvenience, if the shops of sucli tradesman were not so privileged. So the cattle and goods of a guest at an inn, are privileged and protected from distress upon the same principle of public advantage. So also, a horse at a mill, or market, employed in carrying corn to be ground, or to be sold. There is nothing said about a broker, factor, or vendue-master, in relation to this subject, in any of the English authorities ; of course it must .be concluded that, with regard to them, no such privilege existed in England, as relates to innkeepers, &c.
The case of Himely v. Wyatt and Richardson, was not decided by a full bench. But the doctrine laid down in that case, it is said, was recognized and approved by a full bench in the determination of the ease of Phelon v. McBride, 1 Bay, 170. But the recognition' of the former case, in the decision of the latter, seems rather a casual dictm, thaft a solemn approval of the point in question; for, it *91 must be remarked that the point now in question was not involved in the case of Phelon v. McBride. In that case, the negro boy-seized for rent appeared to be bound an apprentice, and was there, fore privileged from distress, and not because he was the property of a third person. This is clear from the decision in asubsequent case. Bull v. Iiorlbeclt, where a negro slave, found by accident on the premises, was taken by distress, and the distress held good. Bay,301, The reason assigned in support of the decision in the case of Himely v. Wyatt and Richardson, “that goods, which do not belong to the tenant, ought to be exempt from distress, if the landlord be cogni. sant of that fact,” is by no means satisfactory, and is certainly un. authorized by any doctrine or decision which before governed or applied to the subject. It this principle should prevail, all the old doctrine on the subject will be useless, and must be entirely exploded.
The point, however, in the present case, may be decided without controverting the correctness of the decision in the case of Himely v. Wyatt and Richardson, so far as it goes to exempt the goods of a third person in the hands of a licensed vendue master, upon the samo principle of public utility which applies in other cases, where such exemption is admitted by the law of England. The question b the present case is, whether the shop or counting house of a person exercising the employment of a merchant, fac. tor, or broker, shall privilege and exempt the goods and effects of strangers therein, intrusted to the tenant, to be sold, or exchanged? And we are of opinion, there is no legal ground upon which such a privilege can be supported. It is certainly a strong argument against it, that no such claim of exemption has ever been set up in England, where every encouragement is given to trade, that is con. sisteut with the general interests of the community. And perhaps if this privilege should be allowed, the mischiefs and disadvantages to society in general, would be found to counterbalance all the conveniences that would flow from it. We are, therefore, of opinion that a new trial ought not to be granted.
Bay, J., contra, was of opinion, that goods in the offices and storehouses of brokers and factors, should have the same benefit of exemption from distress, as if they were found in the possession of a vendue master. That it would be very detrimental to trade to lay down a different rule .of law, as almost all the produce of the country goes through the hands of brokers and factors. That the case'of Himely v. Wyatt and Richardson, settled the law on sound legal principles, which ought not to be shaken.
New trial refused.